T.C. Summary Opinion 2012-90

UNITED STATES TAX COURT

CHARLES A. FOSTER AND SUSAN C. FOSTER, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12024-08S.                          Filed September 11, 2012.

Charles A. Foster and Susan C. Foster, pro sese.

Scott L. Little, for respondent.

SUMMARY OPINION

CARLUZZO, Special Trial Judge:  This case was heard pursuant to the

provisions of section 7463.[1]  Pursuant to section 7463(b), the decision to be entered

_____

[1]Unless otherwise indicated, subsequent section references are to the Internal
Revenue Code of 1986, as amended, in effect for the relevant period.  Rule
(continued...)

is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated February 20, 2008 (notice), respondent determined a $21,148.75 deficiency in petitioners' 2003 Federal income tax and imposed a $6,212.49 addition to tax under section 6651(a)(1).[2] The issue for decision is whether petitioners are entitled to a charitable contribution deduction for the donation of a facade easement (easement) to L'Enfant Trust, Inc. (L'Enfant).[3]

## Background

Some of the facts have been stipulated and are so found. Petitioners, who are, and were at all times relevant here, married to each other, resided in the District of Columbia when the petition was filed.

---

[1](...continued)
references are to the Tax Court Rules of Practice and Procedure.

[2]Petitioners now concede liability for a sec. 6651(a)(1) addition to tax as appropriate.

[3]L'Enfant, a District of Columbia nonprofit corporation chartered in 1978, qualifies as a sec. 501(c)(3) organization organized and operated for the purpose of holding and enforcing conservation easements on historic designated properties in Washington, D.C.

On November 26, 2002, Maria P. Logan and James Wade Logan (Logans) and Charles A. Foster (petitioner) purchased, as tenants in common, a two-story residence on 34th Street in the Georgetown Historic District of Washington, D.C. (34th Street). At all times relevant 34th Street was and is subject to restrictions imposed pursuant to the Old Georgetown Act and the Historic Landmark and Historic District Protection Act of 1978 (Preservation Acts).

The $739,000 purchase price of 34th Street was paid in part by cash contributed by the Logans and petitioner--petitioner contributed $6,000--and in part by the proceeds of a $639,200 loan (loan) from Branch Banking & Trust Co. The loan is secured by a deed of trust executed by petitioner and the Logans and guaranteed by petitioners. Immediately following the purchase of 34th Street, the Logans held an undivided 88% ownership interest in it, and petitioner held an undivided 12% ownership interest.

In 2003 petitioner and the Logans conveyed an easement to L'Enfant that, among other things, prohibits changes to the facade of 34th Street without the express written consent of L'Enfant. According to the deed granting the easement (easement deed), the easement's purpose is to preserve an open space for the scenic enjoyment of the general public and to preserve a historically important land area. The easement deed, although executed on April 25, 2003, was not tendered to

L'Enfant until November 12, 2003. A "Lender acknowledgment - Conservation Easement", acknowledging the grant of the easement deed to L'Enfant, is attached to and was recorded with the easement deed in the appropriate office of the District of Columbia.

As occurred in this case, L'Enfant requires all donors to affix a bronze plaque to the donated facade. The plaque serves to inform the public that the facade will be preserved, and L'Enfant often receives calls or tips from local citizens about any construction or alterations to the facades of historic buildings bearing the L'Enfant plaque. L'Enfant actively and periodically inspects buildings on which it holds easements. L'Enfant: (1) routinely reviews all building permits received by the District of Columbia Historic Preservation Office; (2) annually inspects its properties; and (3) when necessary, takes legal action to enforce its rights under the easements.

According to L'Enfant, its role is not to prohibit changes to a property subject to a facade easement it holds but to "mediat[e] change over the years and decades". L'Enfant allows renovations, updates, and improvements when appropriate. Furthermore, the restrictions imposed upon a property subject to a facade easement held by L'Enfant overlap in many respects with restrictions placed upon

a property subject to the Preservation Acts. According to L'Enfant, its facade easement restrictions are enforced more robustly.

On August 23, 2003, an employee of J. Lee Donnelly & Son, Inc. (Donnelly), appraised 34th Street in connection with the planned donation of the easement. According to Donnelly, the fair market value of 34th Street without taking into account the easement (which had not yet been effected) was $895,000 (before-donation value). Donnelly found that the "sales comparison approach" was the most appropriate valuation method for estimating the market value of 34th Street before the donation of the easement. According to Donnelly, if things went as planned, the "historic architectural facade easement" would reduce the value of 34th Street by approximately 11% ($98,500)[4] to $796,500 (after-donation value). Donnelly's determination of the after-donation value relies extensively, if not solely, on an article prepared by Mark Primoli, an Internal Revenue Service employee, which stated that "Internal Revenue Service Engineers have concluded that the proper valuation of a facade easement should range from approximately 10% to 15% of the value of the property" (Primoli article). In contrast to the analysis of the before-donation value included in the Donnelly report, the

---

[4]Rounded to the nearest hundred dollars.

after-donation value is summarized in a single paragraph, reproduced in its entirety

as follows:

> AS DEFINED AND CERTIFIED BY THE U.S. DEPARTMENT OF INTERIOR, NATIONAL REGISTER OF ISTORIC [sic] PLACES AND THE L'ENFNT [sic] TRUST, THE SUBJECT PROPERTY IS AN EXAMPLE OF HISTORIC RESIDENTIAL REAL ESTATE LOCATED IN AN "HISTORIC" MARKET AREA.  IT IS NOW GENERALLY RECOGNIZED BY THE INTERNAL REVENUE SERVICE (IRS) THAT THE DONATION OF A FACADE EASEMENT OF A SINGLE FAMILY PROPERTY RESULTS IN A LOSS OF VALUE ("DEDICATED CHARITABLE CONTRIBUTION") BETWEEN 10% AND 15%.  THE DONATION OF A COMMERCIAL PROPERTY RESULTS IN A LOSS OF VALUE OF BETWEEN 10% AND 12%, OR HIGHER IF DEVELOPMENT RIGHTS ARE LOST.  THE INCLUSIVE DATA SUPPORT AT LEAST THESE RANGES.  SINCE THE SUBJECT IS A VERY VALUABLE BUILDING AND LAND PARCEL WITH EXTENSIVE FACADE AREA, WE ESTIMATE THAT THE SUBJECT'S LOSS OF VALUE FROM THE DONATION OF THE EASEMENT IS 11% OF THE VALUE BEFORE THE EASEMENT ($895,000), WHICH EQUATES IN A LOSS OF:

> NINETY-EIGHT THOUSAND FIVE HUNDRED AND 00/100 DOLLARS
> 
> ($98,500.00)
> (ROUNDED)

On November 12, 2003, Donnelly issued a letter updating the appraisal and

reaffirming its findings.

On September 26, 2003, petitioner and the Logans executed an agreement

reallocating their interests in 34th Street.  The agreement called for the easement

to be taken entirely from petitioner's interest in 34th Street, resulting in a reduction from 12% to 1%. Petitioner realized the economic consequences of this reallocation of interests when 34th Street was sold in December 2007 for approximately $1,395,000, and his share of the proceeds reflected his reduced ownership interest.

Petitioners' joint 2003 Federal income tax return (return), due with extension on October 15, 2004, was not filed until February 27, 2005, and thus was untimely. As relevant here, on the return petitioners claimed a $98,500 charitable contribution deduction for the donation of the easement.

According to the notice, petitioners are not entitled to the deduction for the donation of the easement. Respondent supports the disallowance of that deduction with an appraisal report prepared by Brian J. Flynn on October 14, 2009 (respondent's appraisal report). Although respondent's appraisal report is dated October 14, 2009, it is a retrospective valuation of 34th Street as of November 12, 2003. According to respondent's appraisal report the before-donation value of 34th Street was $925,000.[5] Concluding that there was no reduction in value due to the

---

[5]The parties used the same valuation method to determine the fair market value of 34th Street before the donation of the easement, and except for some nitpicking on points not particularly determinative to the specific issue before us, the parties agree, more or less, on the before-donation value of 34th Street.

donation of the easement, however, respondent's appraisal report shows the after-donation value of 34th Street to be the same as the before-donation value and concludes that the easement has no value.

### Discussion

Section 170(a)(1) provides that there shall be allowable as a deduction any charitable contribution, "payment of which is made within the taxable year." Section 170(a)(1) further provides that a charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary.

Generally, section 170(f)(3) does not permit a deduction for a charitable gift of property consisting of less than the donor's entire interest in that property. Section 170(f)(3)(B)(iii), however, provides an exception to this general rule in the case of a "qualified conservation contribution." Section 170(h)(1) provides that a contribution may constitute a qualified conservation contribution if the contribution is of a "qualified real property interest", the donee is a qualified organization, and the contribution is "exclusively for conservation purposes."

The parties disagree on many points. According to respondent, petitioners are not entitled to a deduction for the contribution of the easement because: (1) the easement granted to L'Enfant was not a "qualified conservation contribution" within the meaning of section 170; (2) petitioners failed to meet the substantiation

requirements of section 170 and its corresponding regulation; (3) petitioners have not met their burden of proof to establish the fair market value of the easement; (4) at most, petitioners are entitled to a deduction equal to only 12% of the fair market value of the easement at the time of the contribution; and (5) assuming petitioners are entitled to a deduction for the contribution of the easement, the deduction is subject to the limitations of section 170(e)(1)(A).  Petitioners disagree and have responded, point by point, to each of respondent's positions.  Under the circumstances, we think it appropriate to first address the disagreement between the parties with respect to the fair market value of the easement.

Although the parties disagree on the fair market value of the easement at the time of its donation, they agree that the appropriate valuation method is the before-donation and after-donation method.  See Hilborn v. Commissioner, 85 T.C. 677, 688 (1985); Griffin v. Commissioner, T.C. Memo. 1989-130, aff'd, 911 F.2d 1124 (5th Cir. 1990); Stotler v. Commissioner, T.C. Memo. 1987-275; see also sec. 1.170A-14(h)(3)(i), Income Tax Regs.  They also agree on the method used to arrive at the fair market value of 34th Street before the donation of the easement; they sharply part ways on the valuation method used to arrive at the fair market value of 34th Street after the donation of the easement.

According to Donnelly's report, elements that generally reduce the after-donation value of a property subject to a facade easement include the loss of development rights "up to the maximum density allowed", and "the loss that may occur if market preference changes as to exterior design, color, windows and doors, roof lines, etc.".  We have some concerns with the influence on value that the Donnelly report attributes to the restrictions imposed on 34th Street by L'Enfant.  First, the restrictions imposed on 34th Street by L'Enfant, as explained at trial by the president of L'Enfant, are not as inflexible as the report seems to suggest.  Second, the same or similar restrictions imposed on 34th Street as a result of the Preservation Acts are, for the most part, ignored in the report.  Third, the December 2007 sale of 34th Street, as encumbered by the easement, suggests that the value of the easement as determined by Donnelly was overstated.  See Trout Ranch, LLC v. Commissioner, ___ Fed. Appx. ___, 2012 WL 3518564 (10th Cir. Aug. 16, 2012), aff'g T.C. Memo. 2010-283.

Donnelly's report explains the operation and purpose of L'Enfant, but the explanations support more the reason or reasons that a facade easement is created and donated, rather than show how the after-donation value of a property, and in particular the after-donation value of 34th Street, is determined.  Donnelly's generalized discussions aside, the report, as noted, relies extensively, if not solely,

on the Primoli article in arriving at an 11% reduction in the value of 34th Street as a result of the charitable contribution of the easement to L'Enfant. We are unable to distance ourselves from the notion that Donnelly considered the range set forth in the Primoli article as a "safe harbor" for establishing the value of the easement. In effect, the Donnelly report does not so much determine the after-donation value of 34th Street in order to determine the value of the easement as much as it values the easement in order to determine the after-donation value of 34th Street.

We recognize that in other cases we found that encumbering a property with a facade easement reduced the property's fair market value and therefore allowed for the easement to be valued using the before-donation and after-donation method. Needless to say, we are unfamiliar with the evidence included in the records of those cases. We assume that such evidence supported the values of the encumbered properties as determined through the use of a recognized method of valuation. See, e.g., Simmons v. Commissioner, T.C. Memo. 2009-208, aff'd, 646 F.3d 6 (D.C. Cir. 2011); Griffin v. Commissioner, T.C. Memo. 1989-130; Losch v. Commissioner, T.C. Memo. 1988-230. We have no such evidence here; instead petitioners rely upon what they apparently consider to be a safe harbor estimate to determine the value of the easement and resulting after-donation value of 34th Street. As we noted in Nicoladis v. Commissioner, T.C. Memo. 1988-163, "we do

not mean to imply that a general "10-percent rule" has been established with respect to facade donations.  * * *  We did not * * * [do so in Hilborn] and do not here."

The after-donation value for 34th Street shown in the Donnelly report is largely unsupported by any analysis of qualitative factors that support that value. Instead, the after-donation value is determined by applying a percentage reduction, within a range suggested by the Primoli article, to the before-donation value of 34th Street.  The valuation method employed in the Donnelly report to arrive at the after-donation value of 34th Street is not persuasive.

Respondent disallowed the charitable contribution deduction for the donation of the easement to L'Enfant, and the burden is on petitioners to show that this disallowance was in error.  See Rule 142(a); Anselmo v. Commissioner, 757 F.2d 1208, 1210-1211 (11th Cir. 1985) (taxpayer had the burden of proving that the valuation of donated property should have been higher than that stated in the notice of deficiency), aff'g 80 T.C. 872 (1983).  All things considered, we find that they have failed to satisfy their burden in that regard.  Furthermore, to the extent that the easement might have value, there is insufficient evidence in the record that would allow us to establish that value.  Because the value of the easement cannot be determined, respondent's disallowance of the deduction for

the donation of that easement is sustained.  Because of this finding, we need not address the other issues addressed by the parties.

To reflect the foregoing and petitioners' concession of the section 6651(a)(1) addition to tax,

<u>Decision will be entered</u>

<u>for respondent</u>.