T.C. Memo. 2013-172

UNITED STATES TAX COURT

KAYLN M. CARPENTER, ET AL.,[1] Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

Docket Nos. 15589-10, 15590-10,          Filed July 25, 2013.
              15591-10.

Larry D. Harvey, for petitioners.

Sara Jo Barkley and Luke D. Ortner, for respondent.

_____

[1]Cases of the following petitioners are consolidated herewith:  Scott A. Van Wyhe, docket No. 15590-10, and John C. and Sharon L. McSween, docket No. 15591-10.

[*]This opinion supplements our prior opinion, Carpenter v. Commissioner, T.C. Memo. 2012-1.

[*2]                SUPPLEMENTAL MEMORANDUM OPINION


HAINES, Judge:  This case is before the Court on petitioners' motion to reconsider our opinion in Carpenter v. Commissioner, T.C. Memo. 2012-1 (Carpenter I), pursuant to Rule 161.[2]  Respondent objects.  In their motion petitioners allege that this Court erred in relying on Kaufman v. Commissioner, 136 T.C. 294 (2011) (Kaufman II), which was affirmed in part, vacated in part, and remanded in part by the Court of Appeals for the First Circuit in Kaufman v. Shulman, 687 F.3d 21 (1st Cir. 2012) (Kaufman III).[3]  Petitioners make various other claims which we will address below.

---

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  Amounts are rounded to the nearest dollar.

[3]The IRS originally filed a motion for summary judgment with this Court on January 15, 2010.  In ruling on the motion for summary judgment in Kaufman v. Commissioner, 134 T.C. 182 (2010) (Kaufman I), we disallowed any deductions for the easement contribution but found genuine issues of material fact remaining with regard to the cash contribution deduction and the IRS' imposition of penalties.  In a second Opinion after a trial on the reserved issues, this Court on April 4, 2011, in Kaufman v. Commissioner, 136 T.C. 294 (2011) (Kaufman II), aff'd in part, vacated in part and remanded in part, 687 F.3d 21 (1st Cir. 2012), reaffirmed its ruling on the easement but held that the taxpayers were entitled to deduct their $16,840 cash contribution on their 2004 return (as opposed to their 2003 return) and were liable for only a small penalty for negligence in claiming the deduction for the earlier year.

**[*3]**                                   Background

In Carpenter I we gave a background of the facts, which we incorporate herein by reference. The facts were based upon the parties' pleadings, affidavits, and exhibits in support of and in opposition to the motion for partial summary judgment. The facts were stated solely for the purpose of deciding the motion and not as findings of fact in this case. For convenience and clarity, we repeat below the facts relevant to our disposition of petitioners' motion for reconsideration, and we supplement those facts as appropriate to provide a complete background statement.

The facts of all petitioners' cases, though not identical, are substantially similar. On or about December 23, 2003, each petitioner acquired a parcel or parcels of land in Teller County, Colorado, from Sixty Seven, LLC (Sixty Seven). Petitioners held their parcels in fee simple. On or about December 24, 2003, each petitioner conveyed a conservation easement to Greenlands, a charitable nonprofit Colorado corporation which qualifies as a tax-exempt nonprofit organization under sections 501(c)(3) and 170(b)(1)(A)(iv).[4]

---

[4]The McSweens owned two parcels of land in Teller County. They conveyed a conservation easement over the first parcel of land on or about December 24, 2003, and conveyed a conservation easement over the second parcel on or about January 29, 2004.

**[*4]** Petitioner Carpenter claimed a $385,600 charitable contribution deduction on her 2004 Federal income tax return.  Petitioner Van Wyhe claimed a $272,998 charitable contribution deduction on his 2004 Federal income tax return, a $265,247 charitable contribution deduction carryover on his 2005 Federal income tax return, and a $262,876 charitable contribution deduction carryover on his 2006 Federal income tax return.  The McSweens claimed a $336,500 charitable contribution deduction on their 2003 joint Federal income tax return, a $336,500 charitable contribution deduction on their 2004 joint Federal income tax return, a $311,776 charitable contribution deduction carryover on their 2004 joint Federal income tax return, and a $612,844 charitable contribution deduction carryover on their 2005 joint Federal income tax return.  All of the Federal income tax returns were timely filed.

All of the conservation easement deeds were virtually identical and contained the following provision for extinguishment of the easement:

> Extinguishment--If circumstances arise in the future such that render the purpose of this Conservation Easement impossible to accomplish, this Conservation Easement can be terminated or extinguished, whether in whole or in part, by judicial proceedings, <u>or by mutual written agreement of both parties</u>, provided no other parties will be impacted and no laws or regulations are violated by such termination. * * * [Emphasis added.]

**[\*5]** A notice of deficiency was mailed to each petitioner disallowing the charitable contribution deductions. Respondent cited the emphasized language above in determining that petitioners had not met the requirement of section 1.170A-14(g)(6)(i), Income Tax Regs., that their conservation easements be granted in perpetuity. Each petitioner timely filed a petition with this Court.

In Carpenter I, respondent moved for partial summary judgment on the grounds that petitioners' conservation easements were not protected in perpetuity and thus were not qualified conservation contributions. Specifically, respondent argued that petitioners failed to meet the requirements of section 1.170A-14(g)(6)(i), Income Tax Regs., because petitioners and Greenlands can mutually agree to extinguish the conservation easements. We held that the provisions of section 1.170A-14(g)(6)(i), Income Tax Regs., requiring a judicial proceeding to extinguish a conservation easement may not be avoided and that petitioners had failed to satisfy the requirements of section 1.170A-14(g)(6)(i), Income Tax Regs. As a result, we held in favor of respondent and granted the motion for partial summary judgment.

**[*6]**                                                   Discussion

I.      Motions To Reconsider

A motion to reconsider is governed by Rule 161.  Rule 161 establishes a

filing deadline but provides no guidance on when the Court should grant or deny a

motion to reconsider.  In the absence of more specific guidance, we look to

caselaw and the Federal Rules of Civil Procedure.  See Rule 1(b).

The decision to grant a motion to reconsider lies within the discretion of the

Court.  Estate of Quick v. Commissioner, 110 T.C. 440, 441 (1998).  Motions to

reconsider are generally "intended to correct substantial errors of fact or law and

allow the introduction of newly discovered evidence that the moving party could

not have introduced by the exercise of due diligence in the prior proceeding."

Knudsen v. Commissioner, 131 T.C. 185, 185 (2008).  "Reconsideration is not the

appropriate forum for rehashing previously rejected legal arguments or tendering

new legal theories to reach the end result desired by the moving party."  Estate of

Quick v. Commissioner, 110 T.C. at 441-442.

Importantly, an intervening change in the law can warrant the granting of a

motion to reconsider.  See Alioto v. Commissioner, T.C. Memo. 2008-185.  In

Alioto v. Commissioner, T.C. Memo. 2006-199, the Court held that it lacked

jurisdiction over "stand-alone" section 6015(f) cases.  After Congress expanded

[*7] the Court's jurisdiction to include such cases, see Tax Relief and Health Care Act of 2006, Pub. L. No. 109-432, div. C, sec. 408, 120 Stat. at 3061, the taxpayer filed timely motions to reconsider and to vacate, which the Court granted, see Alioto v. Commissioner, T.C. Memo. 2008-185 ("We agree that the Court correctly applied the caselaw as it existed at the time the Court issued Alioto I; however, we disagree that the motion for reconsideration should be denied. After the Court's decision in Alioto I the law and the Court's jurisdiction changed." (Fn. ref. omitted.)).

Petitioners ask us to grant the motion to reconsider in the light of the partial vacating of Kaufman II by the Court of Appeals for the First Circuit. See Kaufman III, 687 F.3d 21.

In their motion for reconsideration petitioners argue that this Court should follow the approach taken by the Court of Appeals for the First Circuit and reconsider its decision. Specifically, petitioners argue that: (1) the conservation easement deeds protected the proceeds to be paid to Greenlands in perpetuity upon termination of the conservation easement and thus under the approach taken in Kaufman III the conservation easement deeds satisfied the requirements of section 1.170A-14(g), Income Tax Regs.; and (2) Colorado law creates restrictions that protect the conservation easement and any proceeds upon termination of such

[*8] conservation easement and that such protection is greater than the protection provided for in Kaufman III; thus this Court should reconsider its opinion in Carpenter I. We take each of these arguments in turn.

## II. Legal Background

### A. Qualified Conservation Contribution

A taxpayer is generally allowed a deduction for any charitable contribution made during the taxable year. Sec. 170(a)(1). A charitable contribution is a gift of property to a charitable organization made with charitable intent and without the receipt or expectation of receipt of adequate consideration. See Hernandez v. Commissioner, 490 U.S. 680, 690 (1989); United States v. Am. Bar Endowment, 477 U.S. 105, 116-118 (1986); see also sec. 1.170A-1(h)(1) and (2), Income Tax Regs. While a taxpayer is generally not allowed a charitable contribution deduction for a gift of property consisting of less than an entire interest in that property, an exception is made for a "qualified conservation contribution." See sec. 170(f)(3)(A), (B)(iii).

A "qualified conservation contribution" is a contribution (1) of a "qualified real property interest" (2) to a "qualified organization" (3) which is made "exclusively for conservation purposes." Sec. 170(h)(1); see also sec. 1.170A-14(a), Income Tax Regs. Respondent concedes that there was a contribution of a

[*9] qualified real property interest and that at the time of the contribution Greenlands was a qualified organization under section 170(h)(3). Therefore, we focus on the third requirement; i.e., whether petitioners' contributions of the conservation easements to Greenlands were exclusively for conservation purposes.

A contribution is made exclusively for conservation purposes only if it meets the requirements of section 170(h)(5). Glass v. Commissioner, 124 T.C. 258, 277 (2005), aff'd, 471 F.3d 698 (6th Cir. 2006). Section 170(h)(5)(A) provides that "[a] contribution shall not be treated as exclusively for conservation purposes unless the conservation purpose is protected in perpetuity." Section 1.170A-14(g), Income Tax Regs., elaborates on the enforceability-in-perpetuity requirement. Paragraph (g)(1) provides generally that in order for a conservation easement to be enforceable in perpetuity, the "interest in the property retained by the donor * * * must be subject to legally enforceable restrictions * * * that will prevent uses of the retained interest inconsistent with the conservation purposes of the donation." The various subparagraphs of paragraph (g) set forth many of these legally enforceable restrictions. Mitchell v. Commissioner, 138 T.C. 324, 33 (2012).

Paragraph (g)(2) addresses mortgages and in pertinent part provides that "no deduction will be permitted * * * for an interest in property which is subject to a

**[*10]** mortgage unless the mortgagee subordinates its rights in the property to the right of the * * * [donee] organization to enforce the conservation purposes of the gift in perpetuity."

Paragraph (g)(3) is entitled "Remote future event" and addresses events that may defeat the property interest that has passed to the donee organization. It provides that a deduction will not be disallowed merely because on the date of the gift there is the possibility that the interest will be defeated so long as on that date the possibility of defeat is so remote as to be negligible.

Paragraph (g)(6) is entitled "Extinguishment" and recognizes that after the donee organization's receipt of an interest in property, an unexpected change in the conditions surrounding the property can make impossible or impractical the continued use of the property for conservation purposes. Subdivision (i) of paragraph (g)(6) provides in pertinent part:

> If a subsequent unexpected change in the conditions surrounding the property that is the subject of a donation under this paragraph can make impossible or impractical the continued use of the property for conservation purposes, the conservation purpose can nonetheless be treated as protected in perpetuity if the restrictions are extinguished by judicial proceeding and all of the donee's proceeds * * * from a subsequent sale or exchange of the property are used by the donee organization in a manner consistent with the conservation purposes of the original contribution.

**[*11]** Subdivision (ii) of paragraph (g)(6) is entitled "Proceeds" and, in pertinent part, provides:

> for a deduction to be allowed under this section, at the time of the gift the donor must agree that the donation of the perpetual conservation restriction gives rise to a property right, immediately vested in the donee organization, with a fair market value that is at least equal to the proportionate value that the perpetual conservation restriction at the time of the gift bears to the value of the property as a whole at that time.  * * * For purposes of this paragraph (g)(6)(ii), that proportionate value of the donee's property rights shall remain constant.  Accordingly, when a change in conditions gives rise to the extinguishment of a perpetual conservation restriction under paragraph (g)(6)(i) of this section, the donee organization, on a subsequent sale, exchange, or involuntary conversion of the subject property, must be entitled to a portion of the proceeds at least equal to that proportionate value of the perpetual conservation restriction * * *

B.    Carpenter I

In Carpenter I, petitioners first argued that section 1.170A-14(g)(6)(i), Income Tax Regs., should be read in tandem with section 1.170A-14(g)(3), Income Tax Regs.  Petitioners claimed that the conditions necessary for extinguishment of the conservation easements are not possible or the possibility is so remote as to be negligible.  Thus, petitioners argued that the possibility of extinguishment by mutual agreement of the parties had to be disregarded under the so-remote-as-to-be-negligible standard in determining whether the conservation

[*12] easement was enforceable in perpetuity. We relied on our previous holding in Kaufman II to find that the so-remote-as-to-be-negligible standard does not modify section 1.170A-14(g)(6)(i), Income Tax Regs.

Second, petitioners argued that the donations created charitable trusts or restricted gifts which implicate the doctrine of cy pres. Under cy pres, the fact that termination of the conservation easements would require a judicial proceeding would prevent the parties from extinguishing the easements by mutual agreement. We found that petitioners' contribution of conservation easements did create restricted gifts under Colorado law; however, we found the doctrine of cy pres inapplicable to the restricted gifts. Thus, we found that petitioners could terminate their conservation easements through mutual consent of all the parties.

Finally, we found that such extinguishment by mutual consent of the parties violates the requirements of section 1.170A-14(g)(6)(i), Income Tax Regs., as extinguishment by mutual consent of the parties does not guarantee that the conservation purpose of the donated property will continue to be protected in perpetuity. We noted that the "'restrictions [in a deed] are supposed to be perpetual in the first place, and the decision to terminate them should not be solely by interested parties. With the decision-making process pushed into a court of law, the legal tension created by such judicial review will generally tend to create

[*13] a fair result.'" <u>Carpenter I</u>, slip op. at 18-19 (quoting Small, Federal Tax Law of Conservation Easements 16-4 (1986)).

C.   <u>Kaufman III</u>

In 1999 Lorna and Gordon Kaufman, the taxpayers, bought a single-family rowhouse in the South End of Boston subject to local restrictions.  In 2003 the taxpayers contributed to a donee organization a facade easement on their single-family rowhouse.  At the time of contribution, the property was subject to a mortgage.  The mortgagee agreed to subordinate the mortgage to the conservation easement deed in favor of the donee organization; however, the mortgagee retained a "prior claim" to all proceeds of condemnation and to all insurance proceeds resulting from any casualty of the property.  The taxpayers claimed a charitable contribution deduction equal to the value they assigned to the facade easement.  The Commissioner disallowed the deduction because the taxpayers had failed to meet the requirement of section 1.170A-14(g)(6)(ii), Income Tax Regs., that the charity receive a proportionate share of proceeds following judicial extinguishment of the facade easement and a subsequent sale of the property.

In <u>Kaufman II</u>, the taxpayers argued that though the mortgagee may have had a prior claim to condemnation proceeds over the donee, that did not absolve Lorna Kaufman of her obligation to make good on the donee's entitlement to a pro

[*14] rata share of the proceeds realized from the sale or involuntary conversion of the property. As a result, the taxpayers claimed the various agreements satisfied the requirements of section 1.170A-14(g)(6)(ii), Income Tax Regs. This Court found the donee's contractual right against the taxpayer to a share of the proceeds to be insufficient to satisfy the requirements of section 1.170A-14(g)(6), Income Tax Regs., stating: "[W]e think it the intent of the drafters of section 1.170A-14(g)(6), Income Tax Regs., that the donee have a right to a share of the proceeds and not merely a contractual claim against the owner of the previously servient estate." Kaufman II, 136 T.C. at 309.

The taxpayers also argued that section 1.170A-14(g)(6), Income Tax Regs., should be read in tandem with section 1.170A-14(g)(3), Income Tax Regs. The taxpayers hypothesized a very low probability of occurrence of a set of events that would deprive the charity of its proportional share of proceeds following judicial extinguishment of the facade easement and subsequent sale of the property. They concluded that the possibility of such deprivation was "so remote as to be negligible" and, thus, had to be disregarded under the so-remote-as-to-be-negligible standard in determining whether the facade easement was enforceable in perpetuity.

[*15] This Court in Kaufman II found that the so-remote-as-to-be-negligible standard does not modify section 1.170A-14(g)(6)(ii), Income Tax Regs. Specifically, we held that

> It is not a question as to the degree of improbability of the changed conditions that would justify judicial extinguishment of the restrictions. Nor is it a question of the probability that, in the case of judicial extinguishment following an unexpected change in conditions, the proceeds of a condemnation or other sale would be adequate to pay both the bank and * * * [the charity]. As we said in Kaufman v. Commissioner, 134 T.C. at 186, the requirement in section 1.170A-14(g)(6)(ii), Income Tax Regs., that * * * [the charity] be entitled to its proportionate share of the proceeds is not conditional: "Petitioners cannot avoid the strict requirement in section 1.170A-14(g)(6)(ii), Income Tax Regs., simply by showing that they would most likely be able to satisfy both their mortgage and their obligation to * * * [the charity]."

Kaufman II, 136 T.C. at 313. The Court of Appeals for the First Circuit agreed. Kaufman III, 687 F.3d at 27.

On appeal, the Court of Appeals for the First Circuit in Kaufman III held for the taxpayers, finding the Commissioner's reading of section 1.170A-14(g)(6), Income Tax Regs., unreasonable. The Court of Appeals noted the superpriority of tax liens to most prior claims and determined that the Commissioner's reading of section 1.170A-14(g)(6), Income Tax Regs., would defeat the purpose of the statute. Specifically, the Court of Appeals stated:

**[\*16]** The IRS reads the word "entitled" in the extinguishment regulation to mean "gets the first bite" as against the rest of the world, a view the Tax Court accepted in reading "entitled" to mean "ha[s] an absolute right." Kaufman II, 136 T.C. at 313. But a grant that is absolute against the owner-donor is also an entitlement, Black's Law Dictionary (7th ed. 1999) ("entitle" defined as "[t]o grant a legal right to"); Collins English Dictionary (10th ed. 2009) ("to give (a person) the right to do or have something"), and almost the same as an absolute one where third-party claims (here, the bank's or the city's) are contingent and unlikely.

Kaufman III, 687 F.3d at 27.

The Commissioner also argued that the taxpayers failed to meet the requirements of section 1.170A-14(g)(1), Income Tax Regs. A provision in the agreement between the taxpayers and the donee stated that nothing in the conservation easement deed of trust shall be construed to limit the donee's right to give its consent to changes in the conservation easement deed or to abandon some or all of its rights thereunder. The Commissioner argued that this provision was a blank check to the donee to consent to any type of change, irrespective of its compatibility with the donation's conservation purpose; thus, the easement failed to include the necessary restrictions that would prevent uses inconsistent with the conservation purpose as required by section 1.170A-14(g)(1), Income Tax Regs.

The Court of Appeals rejected the Commissioner's argument, citing a similar argument made in Commissioner v. Simmons, 646 F.3d 6, 10 (D.C. Cir.

[*17] 2011). The Court of Appeals held that "[t]he language of paragraph (g)(1) nowhere suggests the stringent outcome that the IRS seeks to ascribe to it and the consequences of the reading would be to deprive the donee organization of flexibility to deal with remote contingencies." Kaufman III, 687 F.3d at 28.

III.   Whether Kaufman III Requires This Court To Reconsider Its Opinion in Carpenter I

Petitioners argue that the Court of Appeals for the First Circuit's opinion in Kaufman III is an intervening change in law and requires this Court to reconsider its opinion in Carpenter I. Specifically, petitioners argue that in the light of the Court of Appeals for the First Circuit's emphasis on the destination of proceeds upon extinguishment of a conservation easement in Kaufman III, this Court should take an overall approach in analyzing the in-perpetuity requirement of section 170(h)(5)(A) and section 1.170A-14(g), Income Tax Regs., and focus on any proceeds resulting from an extinguishment of the conservation easements. Petitioners argue that if there were extinguishments in this case, Greenlands would receive its proportionate share of any proceeds from such extinguishment, that Greenlands is bound by law to discharge its exempt purpose upon receipt of such proceeds, and thus any such proceeds are protected in perpetuity, which is the goal of the law. Respondent argues that Kaufman III does not apply to this case.

[*18] Specifically, respondent argues that Kaufman III does not represent an intervening change in law for purposes of this case, that petitioners have misread Kaufman III, and that Kaufman III is not binding in the present case.[5] We agree with respondent.

Kaufman III addressed legal issues different from the one present in this case. As pertinent to this case, Kaufman III addressed the proper interpretation of section 1.170A-14(g)(6)(ii), Income Tax Regs., and, in particular, the breadth of the donee organization's entitlement to proceeds from the sale, exchange, or involuntary conversion of property following the judicial extinguishment of a perpetual conservation restriction burdening the property. The court held that it was sufficient that the donee organization have a right to postextinguishment proceeds that was absolute against the owner-donee of the burdened property. Kaufman III, 687 F.3d at 27. Greenlands' right to postextinguishment proceeds

---

[5]Under Golsen v. Commissioner, 54 T.C. 742, 757 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971), the Court will follow the clearly established position of a Court of Appeals to which a case is appealable. However, we will give effect to our own views in cases appealable to courts that have not yet decided the issue. Id. This case is appealable to the Court of Appeals for the Tenth Circuit absent stipulation otherwise. See sec. 7482(b)(1)(A). The Court of Appeals for the Tenth Circuit has not yet ruled on the issue of whether a taxpayer may mutually agree with a donee organization to terminate a conservation easement when it becomes impossible to carry out the purpose of the conservation easement and still meet the requirements of sec. 1.170A-14(g)(6)(i), Income Tax Regs.

**[\*19]** was not at issue in Carpenter I and has not been raised by respondent as a challenge to whether petitioners satisfied the in-perpetuity requirement of section 170(h)(5)(A) and section 1.170A-14(g), Income Tax Regs.

The Court of Appeals for the First Circuit also rejected the Commissioner's argument that the provisions of section 1.170A-14(g)(1), Income Tax Regs., were violated by terms in the relevant agreement allowing the donee organization to give its consent to changes in the facade in question or to abandon some or all of its rights under the agreement. Kaufman III, 687 F.3d at 27-28. The Court of Appeals for the First Circuit agreed with the Court of Appeals for the D.C. Circuit, which has said that type of clause is necessary to allow the donee organization "'to accommodate such change as may become necessary to make a building livable or usable for future generations while still ensuring the change is consistent with the conservation purpose of the easement.'" Id. at 28 (quoting Commissioner v. Simmons, 646 F.3d at 10). No similar provision is at issue in this case.

Petitioners would draw a general rule with respect to the perpetuity requirement from the analysis of the Court of Appeals for the First Circuit in Kaufman III. Petitioners state:

> Under paragraph (g)(6)(i), the conservation purpose of a preservation easement will "be treated as protected in perpetuity"--notwithstanding that changed circumstances might thwart that

[*20] purpose and result in extinguishment of the easement--if the restriction agreement provides that such a change in circumstances will be treated in a manner consistent with paragraph (g)(6).

They elaborate:

Paragraph (g)(6) essentially provides that if an easement agreement entitles the donee to a share of proceeds equivalent to the proportionate value of the easement, to be used to carry out the general charitable purpose of the easement contribution in the event changed conditions require the easement's extinguishment, the conservation purpose will be treated as if it were protected in perpetuity.

Petitioners concede that the language of their conservation easement deeds departs from the situation described in section 1.170A-14(g)(6), Income Tax Regs., by allowing extinguishment of the easement by mutual agreement of the parties to the deeds. They suggest that that provision be disregarded; i.e., that "any resolution of the 'in perpetuity' requirement should not be determined based upon extraneous language contained in the conservation easement deed." (Emphasis added.) But petitioners have failed to show that the by-mutual-agreement provision is extraneous; i.e., "Unrelated to the * * * matter at hand." The American Heritage Dictionary of the English Language 628 (5th ed. 2011). It is related to the matter at hand; it allows the parties to the conservation deed to determine for themselves whether conditions have changed and whether any change in conditions

**[*21]** makes impossible or impractical the continued use of the property for conservation purposes.

Petitioners also argue that we stated in Carpenter I that "the regulation in paragraph (g)(6) merely creates a safe harbor." We stated in Carpenter I that "the extinguishment regulation provides taxpayers with a guide, a safe harbor, by which to create the necessary restrictions to guarantee protection of the conservation purpose in perpetuity." Id., slip op. at 18. To make our position clear, extinguishment by judicial proceedings is mandatory. Therefore, we reject petitioners' argument that section 1.170A-14(g)(6), Income Tax Regs., contemplates any alternative to judicial extinguishment.

Nor do we read Kaufman III as sanctioning petitioners' argument of putting into the hands of the parties to a conservation agreement the authority to determine when to extinguish the conservation easement so long as the donee organization gets its share of the proceeds of a subsequent sale. In fact, the First Circuit noted that "paragraph (g)(6) only applies when the easement is 'extinguished by judicial proceeding'". Kaufman III, 687 F.3d at 26 n.3. Indeed, petitioners concede the indispensableness of a judicial determination in the penultimate paragraph of their memorandum in support of their motion: "Paragraph (g)(6) ultimately requires that the organization to which a preservation easement is donated must be entitled to a

**[\*22]** share of proceeds from any future sale of the property that occurs <u>after a court extinguishes the easement</u> because changed circumstances have made it impossible to carry out the easement's preservation purpose." (Emphasis added.)

As a result of the foregoing, we find that the holding in <u>Kaufman III</u> does not apply to this case and thus does not constitute an intervening change in law which would justify granting the motion to reconsider.

IV.    <u>Colorado Law</u>

Petitioners also argue that Colorado law creates restrictions that protect the conservation easement and any proceeds upon termination of such conservation easement and that because such protection is greater than the protection provided for in <u>Kaufman III</u>, this Court should reconsider its opinion in <u>Carpenter I</u>. We addressed petitioners' argument with respect to Colorado law's effect on the conservation easement deeds in <u>Carpenter I</u>. Petitioners are now simply trying to argue a new legal theory with respect to Colorado law. As we previously stated: "Reconsideration is not the appropriate forum for rehashing previously rejected legal arguments or tendering new legal theories to reach the end result desired by the moving party." <u>Estate of Quick v. Commissioner</u>, 110 T.C. at 441-442.

**[\*23]** V.    <u>Conclusion</u>

Petitioners have not presented any newly discovered evidence or cited an intervening change in the law that would warrant granting this motion for reconsideration.

In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Appropriate orders will be issued</u>.