# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 4, 2011　　　　　Decided June 21, 2011

No. 10-1063

COMMISSIONER OF INTERNAL REVENUE SERVICE,
APPELLANT

v.

DOROTHY JEAN SIMMONS,
APPELLEE

———

Appeal from the United States Tax Court

———

*Patrick J. Urda,* Attorney, U.S. Department of Justice, argued the cause for appellant. With him on the briefs was *Kenneth L. Greene*, Attorney.

*Robert J. Onda* argued the cause for appellee. With him on the brief was *Timothy S. Rankin*.

*Matthew A. Eisenstein* was on the brief for *amici curiae* The National Trust For Historic Preservation, The L'Enfant Trust, and Foundation for the Preservation of Historic Georgetown in support of appellee.

Before: GINSBURG and GARLAND, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

2

Opinion for the Court filed by *Circuit Judge* GINSBURG.

GINSBURG, *Circuit Judge*: The Commissioner of Internal Revenue appeals a decision of the Tax Court holding taxpayer Dorothy Jean Simmons was entitled to claim deductions in 2003 and 2004 for donating to the L'Enfant Trust, Inc. conservation easements on the façades of two buildings located in an historic district. The Commissioner argues Simmons may not take these deductions because her contribution was not "exclusively for conservation purposes," as required by 26 U.S.C. § 170(h)(1)(C), and because she failed to obtain "qualified appraisals" meeting the standards of Treasury Regulation § 1.170A-13(c)(3)(ii). We hold the Tax Court did not clearly err in concluding the factual circumstances supporting Simmons's deductions met the applicable statutory and regulatory requirements.

## I. Background

During the years at issue, Simmons owned two properties in the Logan Circle neighborhood of Washington, D.C. — one on the Circle and one nearby on Vermont Avenue. The two properties were and are subject to the District of Columbia's Historic Landmark and Historic District Protection Act of 1978, D.C. Code § 6-1101 *et seq*. The D.C. Historic Preservation Office may fine any person who violates the District's preservation laws and can compel that person to restore a structure that he impermissibly altered. *Id.* § 6-1110.

A. The Conservation Easement Deeds

The L'Enfant Trust, Inc. is a tax-exempt organization under 26 U.S.C. § 501(c)(3), dedicated to the preservation of historic properties. In 2003 Simmons executed a "Conservation Easement Deed of Gift" granting to L'Enfant

"an easement in gross, in perpetuity, in, on, and to the Property, the Building and the Façade" on Logan Circle. In 2004 she granted to L'Enfant another, essentially identical easement on the Vermont Avenue property.

Each deed prohibits Simmons from materially altering the façade of the property without the written consent of L'Enfant, and requires her to maintain the properties in good repair, periodically clean the façades, and ensure any change to a façade will comply with "applicable federal, state and local governmental laws and regulations." The deeds give L'Enfant the right to inspect the façades and to seek equitable remedies for any violation of the easements. By their terms, the easements are binding upon Simmons and her "successors, heirs and assigns," run "in perpetuity with the land," and "survive any termination of Grantor's or the Grantee's existence."

The deeds allow L'Enfant "to give its consent (e.g., to changes in a Façade) or to abandon some or all of its rights" thereunder. The deeds also acknowledge the properties were already encumbered by deeds of trust securing loans to a mortgage company, but recite that the lenders have agreed to subordinate their rights in the property to the rights of L'Enfant "and join in the execution" of the easement deed for this limited purpose. Attached to each deed are "Lender Acknowledgements" signed by a representative of the lenders.

B. Simmons's Claim of Charitable Deductions

Simmons filed tax returns for 2003 and 2004 claiming charitable deductions of, respectively, $162,500 and $93,000 for having donated the conservation easements to L'Enfant. A taxpayer generally may not take a charitable deduction for the gift of a partial interest in property. 26 U.S.C. §

170(f)(3)(A). There is an exception, however, for a "qualified conservation contribution," *id.* § 170(f)(3)(B)(iii), defined as the contribution "(A) of a qualified real property interest, (B) to a qualified organization, (C) exclusively for conservation purposes," *id.* § 170(h)(1). The parties agree the easements are "qualified real property interest[s]" and L'Enfant is a "qualified organization." *See id.* § 170(h)(2)(C), (3).

As required by the applicable Treasury regulations, *see* Treas. Reg. § 1.170A-13(c)(2)–(3), Simmons obtained appraisals performed by a licensed and certified appraiser, estimating the fair market value of each easement, which appraisals she submitted with her tax returns. The appraiser, James Donnelly, determined that prior to the easement the fair market value of the Logan Circle property was $1,250,000 and that of the Vermont Avenue property was $845,000. Donnelly estimated donation of the easement would diminish the value of the former by $162,500 (13 percent), and that of the latter by $93,000 (11 percent).

Before the Tax Court, the Commissioner argued Simmons could not claim a charitable deduction because (1) the easements were not granted "exclusively for conservation purposes," (2) Simmons had failed to submit "qualified appraisals" proving the fair market value of the easements, and (3) as shown by an appraisal done by an employee of the Internal Revenue Service, the easements were of no value. The Tax Court disagreed in all respects but held the easements were worth only $56,250 and $42,250 respectively. *Simmons v. Comm'r*, 98 T.C.M. (CCH) 211, 212 (2009).

## II. Analysis

On appeal the Commissioner argues the Tax Court erred in holding (1) the easements donated by Simmons were

"exclusively for conservation purposes," § 170(h)(1)(C), and (2) Simmons had obtained "qualified appraisals" as required by Treasury Regulation § 1.170A-13(c)(3)(ii).[*] Because his arguments raise mixed questions of fact and law, our review is only for clear error. *See Jombo v. Comm'r*, 398 F.3d 661, 663 (D.C. Cir. 2005).

A. Exclusively for Conservation Purposes

To reiterate, a taxpayer may take a deduction for a "conservation contribution" only if it constitutes a qualified interest in real property given exclusively for a "conservation purpose[]." For a contribution to be deemed exclusively for a conservation purpose, that purpose must be "protected in perpetuity." 26 U.S.C. § 170(h)(5)(A). A regulation promulgated by the Department of the Treasury states further that "any interest in the property retained by the donor ... must be subject to legally enforceable restrictions ... that will prevent uses of the retained interest inconsistent with the conservation purposes of the donation." Treas. Reg. § 1.170A-14(g)(1).

The Commissioner argues Simmons is not entitled to deductions for charitable contributions because the easements she granted L'Enfant satisfy neither the statute nor the regulation quoted above. More specifically, the Commissioner points to the clause in the deeds stating "nothing herein contained shall be construed to limit the Grantee's right to give its consent (e.g., to changes in a Façade) or to abandon some or all of its rights hereunder."

---

[*] The issue whether the Tax Court improperly valued the easements is not before us because, as the Commissioner clarified during oral argument, he did not raise this point as an independent basis for objecting to the judgment of the Tax Court.

This clause, he maintains, is inconsistent with conservation in perpetuity because it leaves L'Enfant free to consent to an ahistorical change in the façade and to abandon altogether its right to enforce the restrictions set out in the deeds. The Commissioner also asserts the deeds will not prevent uses of the properties "inconsistent with" their conservation because neither easement includes a clause providing for the perpetuation of the easements in the event L'Enfant ceases to exist or simply abandons its right to enforce the easements.

Simmons objects that each deed states explicitly the parties' intent to preserve the subject property and that, in any event, both she and L'Enfant are limited in what they can change by the District's historic preservation laws. She also points out that L'Enfant's interest in preserving its tax-exempt status will prevent it from approving changes inconsistent with the conservation purposes of — let alone abandoning — the easements. Finally, Simmons maintains if L'Enfant is dissolved, then the easements will be transferred to another organization that engages in similar activities, citing the testimony of the State Historic Preservation Officer.

We conclude the easements meet the requirement of perpetuity in § 170(h)(5)(A). The deeds impose an affirmative obligation upon Simmons "in perpetuity" to maintain the properties in a manner consistent with their historic character and grant L'Enfant the authority to inspect the properties and to enforce the easements. By their terms, the deeds will "survive any termination of Grantor's or the Grantee's existence." Although the deeds do not spell out precisely what would happen upon the dissolution of L'Enfant, D.C. law provides the easements would be transferred to another organization that engages in "activities substantially similar to those of" L'Enfant. D.C. Code §§ 29-301.48, 29-301.56. More specifically, the State Historic

Preservation Officer testified the easement initially reverts to the District of Columbia, which then seeks to assign it to a conservation organization. Accordingly, the deeds do all the Commissioner can reasonably demand to "prevent" uses of the properties inconsistent with conservation purposes, as required by Treasury Regulation § 1.170A-14(g)(1).

The clauses permitting consent and abandonment, upon which the Commissioner so heavily relies, have no discrete effect upon the perpetuity of the easements: Any donee might fail to enforce a conservation easement, with or without a clause stating it may consent to a change or abandon its rights, and a tax-exempt organization would do so at its peril. As the amici curiae — the National Trust for Historic Preservation, L'Enfant, and the Foundation for the Preservation of Historic Georgetown — further explain, this type of clause is needed to allow a charitable organization that holds a conservation easement to accommodate such change as may become necessary "to make a building livable or usable for future generations" while still ensuring the change is consistent with the conservation purpose of the easement.

Moreover, the Commissioner has not shown the possibility L'Enfant will actually abandon its rights is more than negligible. L'Enfant has been holding and monitoring easements in the District of Columbia since 1978, yet the Commissioner points to not a single instance of its having abandoned its right to enforce. Simmons's deeds in particular make express L'Enfant's intention to ensure her properties "remain essentially unchanged." Treasury Regulation § 1.170A-14(c)(1) also provides "an eligible donee" — as L'Enfant undisputedly is — must have a "commitment to protect the conservation purposes of the donation" and "the resources to enforce the restrictions." Simmons's entitlement to a deduction for a "qualified conservation contribution"

under 26 U.S.C. § 170(f)(3)(B)(iii), therefore, is supported by the limitation in Treasury Regulation § 1.170A-14(g)(3):

> A deduction shall not be disallowed under section 170(f)(3)(B)(iii) and this section merely because the interest which passes to, or is vested in, the donee organization may be defeated by the performance of some act or the happening of some event, if on the date of the gift it appears that the possibility that such act or event will occur is so remote as to be negligible.

Simmons's deductions cannot be disallowed based upon the remote possibility L'Enfant will abandon the easements. *See Stotler v. Comm'r*, 53 T.C.M. (CCH) 973, 980–81 (1987) (concluding easement was granted in perpetuity even though grantee could abandon it because possibility future events would undermine perpetuity was "so remote as to be negligible").

We also note any change in the façade to which L'Enfant might consent would have to comply with all applicable laws and regulations, including the District's historic preservation laws.[*] In short, because the donated easements will prevent in perpetuity any changes to the properties inconsistent with conservation purposes, we hold Simmons has made a contribution "exclusively for conservation purposes," in accordance with 26 U.S.C. § 170(h)(1)(C).

---

[*] The Commissioner makes the rather niggling argument that, because of certain administrative shortcomings, compliance with the District's preservation scheme would not perpetuate the conservation purposes of the deeds. Appearing as it does for the first time in the reply brief, the argument is forfeit and we do not address it. *See Sitka Sound Seafoods, Inc. v. NLRB*, 206 F.3d 1175, 1181 (D.C. Cir. 2000).

B. Qualified Appraisals

Section 155(a) of the Deficit Reduction Act of 1984, Pub. L. No. 98-369, 98 Stat. 494, 691, directs the Secretary of the Treasury to prescribe regulations requiring an individual claiming a charitable deduction pursuant to § 170 for property valued at more than $5,000 to obtain "a qualified appraisal for the property contributed." The regulations contain "substantiation requirements," *viz*., that the appraisal include, as relevant here:

> (J) The method of valuation used to determine the fair market value, such as the income approach, the market-data approach, and the replacement-cost-less-depreciation approach; and
>
> (K) The specific basis for the valuation, such as specific comparable sales transactions or statistical sampling ....

Treas. Reg. § 1.170A-13(c)(2)–(3).

The Commissioner argues the Tax Court erred in holding Simmons's appraisals were "qualified." First, he contends Donnelly failed to explain the "method of valuation" he used and to include a substantive basis for the valuation, as required by paragraphs (J) and (K), set out above. In doing the appraisals, Donnelly had relied upon an article prepared by Mark Primoli, an IRS employee, which stated, "Internal Revenue Service Engineers have concluded that the proper valuation of a façade easement should range from approximately 10% to 15% of the value of the property." Internal Revenue Service, *Façade Easement Contributions* (2000). The Commissioner suggests Donnelly arbitrarily picked a percentage between 10 and 15 rather than stating any identifiable method to determine the "after-easement" value.

Simmons argues that because there was no market price for conservation easements, Donnelly properly used the "before and after approach," *Hilborn v. Comm'r*, 85 T.C. 677, 688–89 (1985): He calculated the "difference between the fair market value of the property" prior to donation and "the fair market value of the encumbered property after the granting of the restriction," as permitted by § 1.170A-14(h)(3). To estimate the fair market value of each property once subject to the easement, Donnelly examined sales of similarly encumbered properties and took into account factors a buyer would consider in valuing such a property. The Commissioner, however, complains Donnelly did not identify the properties examined or the parties with whom he spoke and therefore did not provide adequate detail; instead, he said he had considered "subjective and conjectural factors" that would lower the value of the properties after being encumbered by easements.

We hold the Tax Court did not clearly err in concluding the appraisals sufficiently identified the method and basis for the valuations. To determine the fair market value of the property before being encumbered, Donnelly consulted sales of similar properties and identified some of these sales in the appraisals. In ascertaining the fair market value after encumbrance, Donnelly explained he spoke with and considered "the mindset of competent buyers and sellers" and took account of the "considerations they have actually had, or are likely to have, in the buying or selling of a property encumbered by a façade easement." For example, each appraisal noted the property would lose some value because the easement imposed more onerous requirements than does D.C. law. It also listed several factors that would lower the value of the encumbered property, such as potential legal exposure if the donor were to breach the easement and

L'Enfant's right of prior approval for any change to the façade.

After examining sales of easement-encumbered properties and speaking with interested parties, Donnelly concluded the donation of each easement would diminish the value of the property by from 10 to 15 percent, as contemplated by Primoli's article. Specifically, he determined the Logan Circle and the Vermont Avenue properties would lose, respectively, 13 and 11 percent of their value. Although the appraisals might have elaborated further upon the specific bases for reaching each valuation, and thus avoided litigation of this issue, it was not clear error for the Tax Court to conclude Simmons satisfied the substantiation requirements concerning valuation.[*]

In a footnote, the Commissioner "suggests" the appraisals "failed to satisfy other requirements of [Treasury Regulation]

---

[*] The Commissioner also contends the requirements of § 1.170A-13(c)(3) are mandatory rather than directory and therefore cannot be satisfied by merely substantial compliance. *Cf. Bond v. Comm'r*, 100 T.C. 32, 41 (1993) (if Treasury regulations "are procedural or directory in that they are not of the essence of the thing to be done ..., they may be fulfilled by substantial, if not strict compliance") (quoting *Taylor v. Comm'r*, 67 T.C. 1071, 1077–78 (1977)). For her part, Simmons argues the requirements in § 1.170A-13(c)(3) are directory because they do not go to "the essence" of whether a charitable contribution has been made under § 170. *See Bond*, 100 T.C. at 40–41 (reporting requirements of § 1.170A-13(c)(2)(i)(A) and (3) are "directory and not mandatory"). We need not, however, resolve the issue whether a taxpayer can fulfill the requirements of § 1.170A-13(c)(3) through substantial compliance because we conclude above that the Tax Court did not clearly err in finding Simmons fully "complied with the substantiation requirements" by including "all of the required information." 98 T.C.M. (CCH) at 216.

§ 1.170A-13(c)(3)(ii)" but acknowledges the "omissions might seem venal [sic] sins." It is not our practice, however, to indulge "cursory arguments made only in a footnote." *Spirit of the Sage Council v. Norton*, 411 F.3d 225, 229 n.* (D.C. Cir. 2005) (internal quotation marks omitted). Accordingly, we hold the Tax Court did not err in holding Simmons provided the Commissioner with "qualified appraisals."

## III. Conclusion

For the foregoing reasons, the judgment of the Tax Court that Simmons was entitled to claim the deductions at issue is

*Affirmed*.