RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0113p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

HOFFMAN PROPERTIES II, LP; FIVE M ACQ I, LLC,
Tax Matters Partner,

                      *Petitioners-Appellants*,

    *v.*

COMMISSIONER OF INTERNAL REVENUE,

                      *Respondent-Appellee*.

No. 19-1831

─────────────

Appeal from the United States Tax Court.
No. 14130-15—Joseph W. Nega, Judge.

Decided and Filed: April 14, 2020

Before: GUY, THAPAR, and BUSH, Circuit Judges.

─────────────

## COUNSEL

─────────────

**ON BRIEF:** George M. Clarke III, Vivek A. Patel, Brandon M. King, BAKER & MCKENZIE LLP, Washington, D.C., for Appellants. Jacob Christensen, Ivan C. Dale, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

─────────────

## OPINION

─────────────

THAPAR, Circuit Judge. Forever is a really long time—no less so in tax law. The Internal Revenue Code requires that certain donations be "protected in perpetuity" for the donor to receive a tax deduction. I.R.C. § 170(h)(5)(A). The question here is whether a donation satisfies this requirement when it empowers the donor to make harmful changes to the donation whenever the donee fails to act within 45 days of the proposed change. The Tax Court found that this 45-day window falls well short of "perpetuity." We agree and affirm.

Hoffman Properties owns the historic Tremaine Building in Cleveland, Ohio. Over a decade ago, Hoffman donated an easement in the façade of the building and certain airspace restrictions associated with the building to the American Association of Historic Preservation (AAHP). Broadly speaking, Hoffman agreed not to alter the historical character of the façade or to build in the airspace above or next to the building—subject to certain provisions in the donation agreement. Hoffman then sought a $15 million tax deduction for its donation.

As a general rule, the Internal Revenue Code doesn't allow taxpayers to take a charitable deduction for a donation of a partial interest in property (like an easement). I.R.C. § 170(f)(3)(A); Treas. Reg. § 1.170A-14(a). But there's a narrow exception to that rule for what's called a "qualified conservation contribution." I.R.C. § 170(f)(3)(B)(iii); Treas. Reg. § 1.170A-14(a). To qualify, the donation must be "exclusively for conservation purposes." I.R.C. § 170(h)(1)(C); Treas. Reg. § 1.170A-14(e). And relevant here, the term "conservation purpose" includes the preservation of historic buildings. I.R.C. § 170(h)(4)(A)(iv); Treas. Reg. § 1.170A-14(d)(5).

Based on these provisions, the IRS concluded that Hoffman wasn't entitled to a deduction. In later proceedings, the Tax Court agreed and granted summary judgment to the agency, holding that Hoffman's donation didn't qualify because it wasn't "exclusively for conservation purposes." We review that decision de novo. *See Golden v. Comm'r*, 548 F.3d 487, 492 (6th Cir. 2008).

The Internal Revenue Code includes various requirements for a donation to be considered "exclusively for conservation purposes." *See* I.R.C. § 170(h)(4)(B), (5); Treas. Reg. § 1.170A-14(e), (g). The Tax Court found that Hoffman's donation failed multiple of these requirements. But in this case, we need consider only one: the donation must "protect[]" the conservation purposes "in perpetuity." I.R.C. § 170(h)(5)(A).

The parties agree on the general legal framework. To satisfy the "perpetuity" requirement, the donation must be "[e]nforceable in perpetuity," meaning that it includes "legally enforceable restrictions" that will prevent the donor from using its retained interest in the property in a way "inconsistent with the [donation's] conservation purposes." Treas. Reg.

§ 1.170A-14(g)(1); *see Glass v. Comm'r*, 471 F.3d 698, 713 (6th Cir. 2006).  The parties simply disagree about whether Hoffman's donation included adequate restrictions.

So this case largely turns on the meaning of the donation agreement.  As usual, we look to state law to interpret the agreement.  *See United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 722 (1985); *PBBM-Rose Hill, Ltd. v. Comm'r*, 900 F.3d 193, 203 (5th Cir. 2018).  The parties agree that Ohio contract law applies.  *See Andrews v. Columbia Gas Transmission Corp.*, 544 F.3d 618, 623–24 (6th Cir. 2008).  Under Ohio law, courts presume that parties expressed their contractual intent "in the language they [chose] to use in their agreement."  *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir. 2008) (quoting *Graham v. Drydock Coal Co.*, 667 N.E.2d 949, 952 (Ohio 1996)).

The key language in this agreement is in Paragraph 3.  That Paragraph describes certain "[c]onditional [r]ights"—actions that Hoffman could take so long as AAHP approved.  JA 107.  For instance, Hoffman reserved the right to "[a]lter, reconstruct or change the appearance [of the façade] . . . contrary to the Secretary's Standards" or to "[a]lter or change the appearance of the Air Space in a manner contrary to the Secretary's Standards."  JA 107–08.  (For reference, the "Secretary's Standards" are regulations issued by the Secretary of the Interior on the rehabilitation of historic buildings.  36 C.F.R. § 67.7.)  Paragraph 3 also directs Hoffman to submit these proposed changes to AAHP, which would review the changes based on the Secretary's Standards and either approve or reject them.  Finally, the Paragraph makes clear that AAHP's "failure . . . to act within forty-five (45) days of receipt [of a proposed change] shall be deemed to constitute approval [of the change] and to permit [Hoffman] to undertake the proposed activity."  JA 108.

Simply put, Paragraph 3 gives AAHP a 45-day window in which to prevent certain changes to the façade or airspace.  And if the organization misses that window—for whatever reason—it loses the ability to stop the change.  It almost goes without saying that this provision violates the "perpetuity" requirement.  After all, there's a world of difference between restrictions that are enforceable "in perpetuity" and those that are enforceable for only 45 days.  *See The American Heritage Dictionary* 977 (1976) (defining "perpetuity" as "[t]ime without end; eternity"); *Black's Law Dictionary* 711 (5th ed. 1979) (defining "in perpetuity" as "[e]ndless

duration; forever"); *Webster's Third New International Dictionary* 1685 (1986) (defining "perpetuity" as "endless time" and a "duration without limitations as to time"). You can't even really compare the two.

What's more, it seems that most (if not all) of the rights reserved in Paragraph 3 could be inconsistent with the conservation purposes of the donation. We know this not only because of the sheer breadth of the reserved rights—for instance, the power to "[a]lter, reconstruct, or change" the façade—but also because many of the rights are expressly defined as "contrary to the Secretary's Standards." JA 107. Recall that these standards concern the rehabilitation of historic buildings; they're designed to ensure that any changes are "consistent with the historic character of the property." 36 C.F.R. § 67.7(e). And the donation agreement itself tells AAHP to use these standards when it evaluates whether a proposed change would conflict with the purposes of the donation. So it's not hard to imagine how these changes would be inconsistent with the conservation purposes of the donation. By all appearances, then, the agreement fails to protect these purposes "in perpetuity."

Hoffman offers several arguments in response.

*Sua Sponte Ruling.* Hoffman starts with a procedural objection: that the Tax Court improperly raised the 45-day provision on its own initiative. But even if that's true, Hoffman hasn't shown it was prejudiced by the ruling. *See United Rentals (N. Am.), Inc. v. Keizer*, 355 F.3d 399, 411 (6th Cir. 2004). Hoffman had several opportunities to brief the 45-day provision, including when it filed a motion for reconsideration. *See Luig v. N. Bay Enters., Inc.*, 817 F.3d 901, 905 (5th Cir. 2016); *Page Plus of Atlanta, Inc. v. Owl Wireless, LLC*, 602 F. App'x 232, 235–36 (6th Cir. 2015). And in any event, Hoffman hasn't identified what new arguments or evidence it would have raised if it had known about the issue earlier. *See Keizer*, 355 F.3d at 411–12; *United Bhd. of Carpenters, Dresden Local No. 267 v. Ohio Carpenters Health & Welfare Fund*, 926 F.2d 550, 558 (6th Cir. 1991).

*The "Perpetuity" Requirement.* Hoffman next offers an alternative theory of the "perpetuity" requirement—namely, that the restrictions are perpetual because they will always be a part of the agreement and might prevent future changes to the donation. But the Internal

Revenue Code doesn't care about the mere *existence* of restrictions; it requires that the donation "*protect*[]" the conservation purposes "in perpetuity." I.R.C. § 170(h)(5)(A) (emphasis added); *see also* Treas. Reg. § 1.170A-14(g)(1) (explaining that the donation must "*prevent* uses of the retained interest inconsistent with the conservation purposes of the donation" (emphasis added)); Mark L. Ascher, *Federalization of the Law of Charity*, 67 Vand. L. Rev. 1581, 1612 (2014) (explaining that the donation must "be *effective* in preserving the current state of the land or building in question"). And once the 45-day provision is triggered, Hoffman's donation no longer does that. It only takes one change to destroy the historical character of a building. That the donation might prevent *further* destruction is beside the point.

Hoffman's theory also raises more questions than it answers. If a 45-day restriction satisfies the "perpetuity" requirement, what about others? Could Hoffman have required AAHP to respond to a requested change within a week? Or a day? Or even an hour? Rather than try to draw lines—where none exist—we'll stick with the statutory text: forever really means forever.

*The Donation Agreement.* Hoffman also insists that other provisions in the agreement protect the conservation purposes "in perpetuity." But this argument misses the point: whatever else the agreement says, Paragraph 3 prevents AAHP from enforcing these provisions if the organization fails to act on the proposed change within 45 days. And again, this brief window falls far short of the statutory requirement that the conservation purposes of the donation be "protected in perpetuity." I.R.C. § 170(h)(5)(A).

For similar reasons, Paragraph 10 doesn't do Hoffman any good even though it provides that the agreement "shall be interpreted broadly to effect its purposes and the transfer of rights and the restrictions on use." JA 118. This provision tells us to construe the agreement, not rewrite it. *Cf. Keen v. Helson*, 930 F.3d 799, 805 (6th Cir. 2019). But there's no way Hoffman could prevail unless we rewrote some of the terms in Paragraph 3.[1]

---

[1]Curiously, Hoffman doesn't point to the one provision in the agreement that might support this result. Paragraph 10 includes what appears to be a saving clause: "Notwithstanding anything to the contrary herein, [the parties] agree that [AAHP] shall hold this [donation] 'exclusively for conservation purposes' as that term is defined in the Code and [its] implementing regulations[.]" JA 118. Hoffman might have argued that this clause negates any other provision in the agreement that would render the donation not "exclusively for conservation purposes"—such as the 45-day provision. But perhaps it didn't make this argument because other courts have found saving clauses

The 45-day provision also distinguishes this case from others where courts have upheld tax deductions based on similar donations. *See Kaufman v. Shulman*, 687 F.3d 21 (1st Cir. 2012); *Comm'r v. Simmons*, 646 F.3d 6 (D.C. Cir. 2011). In those cases, the parties included clauses that allowed the donee "to give its consent (e.g., to changes in the Façade) or to abandon some or all of its rights" in the donation. *Kaufman*, 687 F.3d at 27–28; *Simmons*, 646 F.3d at 8. The courts reasoned that the clauses didn't violate the perpetuity requirement because "[a]ny donee might fail to enforce a conservation easement, with or without [such] a clause." *Kaufman*, 687 F.3d at 28 (citation omitted); *Simmons*, 646 F.3d at 10. Whatever one thinks of that reasoning—specifically, whether there's a difference between temporary non-enforcement and permanent abandonment—the provision here goes much further. It doesn't simply *allow* AAHP to abandon the protections in the agreement; it *divests* the organization of the power to enforce those protections if it fails to act within a limited window of time. Nonprofits might hesitate before they abandon a donation that they have a legal duty to protect. *See Kaufman*, 687 F.3d at 28; *Simmons*, 646 F.3d at 10. But that reasoning doesn't apply when a nonprofit inadvertently loses its ability to protect a donation because of an artificial time limit.

Nor are the provisions here needed to allow changes that may become necessary "to make a building livable or usable for future generations." *Kaufman*, 687 F.3d at 28 (citation omitted); *Simmons*, 646 F.3d at 10; *see also BC Ranch II, L.P. v. Comm'r*, 867 F.3d 547, 553 (5th Cir. 2017) (explaining that these cases adopted the "common-sense reasoning . . . that an easement may be modified to promote the underlying conservation interests"). Parties can always reserve the right to make changes that are consistent with the conservation purposes of a donation. *See* Nancy A. McLaughlin, *Extinguishing and Amending Tax-Deductible Conservation Easements: Protecting the Federal Investment After* Carpenter, Simmons*, and* Kaufman, 13 Fla. Tax Rev. 217, 285–86 (2012); *see also Glass*, 471 F.3d at 711 (finding that a conservation easement qualified for a deduction when the reserved rights were consistent with the conservation purpose). And in fact, Hoffman did exactly that in Paragraph 4 of its agreement, where it reserved the right to make various changes "consistent" with the terms and

---

unenforceable in this context. *See, e.g.*, *Belk v. Comm'r*, 774 F.3d 221, 228–30 (4th Cir. 2014); *R.R. Holdings, LLC v. Comm'r*, 119 T.C.M. (CCH) 1136, 2020 WL 569926, at *6–7 (2020). Since Hoffman hasn't raised the issue, we'll leave it for another day.

purposes of the donation. JA 109–10. So the agreement provided Hoffman with ample flexibility to make changes even without the conditional rights reserved in Paragraph 3.

*Model Agreements*. Hoffman next points to a model conservation easement issued by a conservation organization in 1996 that included a 45-day provision similar to the one at issue here. On its own terms, this model easement has limited persuasive weight since—as the model itself notes—the IRS "has never approved a 'safe harbor' document" so "no one document truly can be considered a model." JA 481. Indeed, the model never explains why the 45-day provision would be consistent with the "perpetuity" requirement. Nor have we found any cases that say as much.

And for what it's worth, other model easements cut against Hoffman's position. A decade later, the same conservation organization issued a new model easement, which explained that a donee's failure to act on a proposed change within 45 days "shall *not* be deemed to constitute approval of [the] request." JA 865 (emphasis added). Thus, to the extent that these models matter, the more recent model—issued just two years before Hoffman's donation—gave fair warning about the potential risks of the automatic-approval provision.

*The Attempted Amendment*. Hoffman also argues that it amended the donation agreement and notes that one of the provisions in the amendment prohibits "any change to the exterior of the [building] which would be inconsistent with the historical character of such exterior." JA 378. But the original agreement required any "amendment" to be recorded with the Cuyahoga County Recorder's Office. JA 119. And it's undisputed that Hoffman hasn't recorded its amendment. Hence the amendment has no bearing on this case.

Hoffman insists that the recording requirement doesn't apply here because it sought a "reformation" of the agreement, not an "amendment" or "modification." But Hoffman hasn't identified any cases that draw this purported distinction. Courts often describe "reformation" as a remedy by which courts "amend" or "modify" a contract. *See, e.g.*, *Alexander v. Bosch Auto. Sys., Inc.*, 232 F. App'x 491, 498–99 (6th Cir. 2007); *Erie Metroparks Bd. of Comm'rs v. Key Tr. Co. of Ohio*, 764 N.E.2d 509, 513 (Ohio Ct. App. 2001). And ironically, Hoffman itself calls the document an "[a]mendment" throughout its brief. *E.g.*, Hoffman Br. at 7.

What's more, the Tax Court *refused* Hoffman's request to reform the donation agreement.  In the end, it was up to the Tax Court to grant this form of equitable relief.  *See Woods v. Comm'r*, 92 T.C. 776, 782–89 (1989); *see also Kelley v. Comm'r*, 45 F.3d 348, 351 (9th Cir. 1995) (discussing *Woods*).  And Hoffman hasn't shown that the court's refusal to do so was an abuse of discretion.  *See Greer v. Comm'r*, 595 F.3d 338, 344 (6th Cir. 2010); *Kelley*, 45 F.3d at 352; *see also Anchor v. O'Toole*, 94 F.3d 1014, 1025 (6th Cir. 1996) (describing the general standard of review for denials of equitable relief).

*Remote Future Event*.  Finally, Hoffman argues that this case falls within the narrow exception to the perpetuity requirement for remote future events.  To fall within this exception, the possibility that the conservation purpose may be defeated must be "so remote as to be negligible."  Treas. Reg. § 1.170A-14(g)(3).  The parties agree that this means something like "a chance which persons generally would disregard as so highly improbable that it might be ignored with reasonable safety in undertaking a serious business transaction."  *Mitchell v. Comm'r*, 775 F.3d 1243, 1252 (10th Cir. 2015) (citation omitted); *cf. Comm'r v. Sternberger's Estate*, 348 U.S. 187, 194 (1955) (interpreting standard in another tax regulation to refer to "highly improbable" events).

Here, the donation agreement includes multiple terms that specifically address the possibility that the conservation purpose would be defeated.  Given that fact, it's hard to see how the possibility was "so highly improbable that it might be ignored."  *Mitchell*, 775 F.3d at 1252 (citation omitted).  After all, Hoffman certainly didn't ignore it.

In any event, Hoffman hasn't pointed to any evidence in the record showing that the possibility was "so remote as to be negligible"—as was *its* burden.  *See Alioto v. Comm'r*, 699 F.3d 948, 952–53 (6th Cir. 2012); *Glass*, 471 F.3d at 706.  Instead, Hoffman simply asserts that it was "highly improbable" that the 45-day provision would ever be trigged.  And that's not good enough at summary judgment.  *See Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009).  So this argument fares no better than the rest.

We affirm.