# United States Tax Court

T.C. Memo. 2022-12

CORNING PLACE OHIO, LLC, CORNING PLACE OHIO
INVESTMENT, LLC, TAX MATTERS PARTNER,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 12428-20.                    Filed February 28, 2022.

————————

*Michelle M. Hervey*, *Guenther Karl Fanter*, and *Lucas L. Witters*, for
petitioner.

*Anita A. Gill*, for respondent.

## MEMORANDUM OPINION

LAUBER, *Judge*: This case involves a charitable contribution de-
duction claimed by Corning Place Ohio, LLC (Corning Place), for a con-
servation easement. The Internal Revenue Service (IRS or respondent)
issued Corning Place a notice of final partnership administrative adjust-
ment (FPAA) disallowing this deduction. Currently before the Court is
respondent's Motion for Partial Summary Judgment, which raises three
issues: (1) whether the easement deed failed to protect the conservation
purpose in perpetuity, in alleged violation of section 170(h)(5)(A);[1]
(2) whether Corning Place's appraisal and baseline documentation
failed to meet the substantiation requirements of section 170(h)(4)(B)(iii);

---

[1] Unless otherwise indicated, all statutory references are to the Internal Reve-
nue Code (Code), Title 26 U.S.C., in effect at all relevant times, all regulation refer-
ences are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all
relevant times, and all Rule references are to the Tax Court Rules of Practice and Pro-
cedure.

[*2] and (3) whether the deduction should be disallowed because Corning Place did not timely pay the $500 filing fee specified in section 170(f)(13).  We will deny respondent's Motion.[2]

*Background*

The following facts are derived from the parties' pleadings, motion papers, and the exhibits and declarations attached thereto.  They are stated solely for purposes of deciding the Motion for Partial Summary Judgment and not as findings of fact in this case.  *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).

Corning Place is an Ohio limited liability company that at all relevant times has been treated as a partnership for Federal income tax purposes.  Petitioner Corning Place Ohio Investment, LLC, is its tax matters partner.  Corning Place had its principal place of business in Ohio when the petition was filed.

The easement at issue is a historic preservation easement associated with the Garfield Building, an 11-story building at 1965 E. Sixth Street in Cleveland, Ohio.  The building was constructed in 1893 for Harry A. and James R. Garfield, sons of President James A. Garfield, and built on land owned by John D. Rockefeller.

The Garfield Building, built in the Renaissance Revival style, was designed by Henry Ives Cobb, a noted Chicago architect.  It exemplifies an architectural trend of the late 19th and early 20th centuries, when architects worked to adapt traditional styles to large-scale commercial buildings then being erected in major American cities.  The Garfield Building is considered the first steel-frame "skyscraper" east of Cleveland's Public Square, making it an early local example of a significant technological shift in building construction.  It has been listed on the National Register of Historic Places since 2002.  The Secretary of the Interior has denominated the Garfield Building a "certified historic structure" that contributes to integrity of the Euclid Avenue Historic District.

---

[2] The FPAA also disallowed, for lack of substantiation, a $665,500 deduction for business expenses, *see* § 162, and determined various penalties, *see* §§ 6662(a), (b)(1)–(3), (e), and (h), 6662A.  Those adjustments remain at issue.  Respondent has also reserved the right to advance additional theories to support disallowance of the charitable contribution deduction.

[*3]    On January 23, 2015, Corning Place purchased the Garfield Building and the land it occupies for $6 million.  It then began a "certified rehabilitation" to convert the building from vacant office space to residential apartments, while maintaining the building's significant exterior architectural features.

On May 25, 2016, Corning Place recorded an easement deed in Cuyahoga County donating a facade easement on the Garfield Building to the Historic Gateway Neighborhood Corporation (HGNC), a "qualified organization" within the meaning of section 170(h)(3).  According to the deed, the easement's purpose is to ensure that the facade of the Garfield Building

> will be retained and maintained forever in its rehabilitated condition and state[,] exclusively for conservation and preservation purposes, for the scenic, cultural and historic enjoyment of the general public, and to prevent any use or change of the Facade or air space directly above or adjacent to the Building that is inconsistent with the historical character of the Facade.

The deed recognizes the possibility that the easement might be extinguished at some future date if fulfillment of the conservation purpose became impossible or impractical.  In the event the Garfield Building (Property) were sold following judicial extinguishment of the easement, the deed directs that the sale proceeds shall be shared between Corning Place (Grantor) and HGNC (Grantee) as follows:

> *Percentage Interests.*   In accordance with Treas. Reg. § 1.170A-14(g)(6)(ii) for purposes of allocating proceeds . . . , Grantor and Grantee stipulate that as of the Recording Date, Grantor and Grantee are each vested with real property interests in the Property and that such interests have a stipulated percentage in the fair market value of the Property.   Grantee's percentage interest shall be determined as the fair market value of this Easement as of the Recording Date divided by the fair market value of the Property as a whole as of the Recording Date.   Grantor's percentage interest shall be the difference between 100% and the Grantee's percentage interest.   The values upon the Recording Date of this Deed shall be those values used to calculate the deduction for federal income tax purposes allowable by reason of this grant pursuant to Section

**[\*4]**   170(h) of the Code.  The percentage interests of Grantor and Grantee in the fair market value of the Property shall remain constant.

On September 15, 2017, Corning Place timely filed Form 1065, U.S. Return of Partnership Income, for its short taxable year beginning July 7 and ending December 31, 2016.  On this return it claimed a charitable contribution deduction of $22,601,000 for the conservation easement.  It attached to this return an appraisal of the easement, *see* § 170(h)(4)(B)(iii)(I), photographs of the building's exterior taken before rehabilitation, *see* § 170(h)(4)(B)(iii)(II), and a Baseline Data Report. The latter report described the historic and architectural significance of the Garfield Building.

In a letter dated August 13, 2018, the IRS advised Corning Place that its 2016 return had been selected for examination.  During the examination the IRS noted that the appraisal accompanying the return did not include certain "addenda," listed in the table of contents, that set forth the appraiser's qualifications.  At the IRS's request, Corning Place sent the IRS the "addenda."  On September 14, 2018, Corning Place also paid, and the IRS accepted, a $500 filing fee that is required when claiming this type of deduction.  *See* § 170(f)(13).  Corning Place alleges that it filed an amended return on November 1, 2018, although the return does not appear in the record.

On July 23, 2020, the IRS issued petitioner an FPAA that disallowed in full the claimed charitable contribution deduction.  Petitioner timely petitioned this Court for review.  Respondent moved for partial summary judgment on July 29, 2021, and further briefing ensued.

*Discussion*

A.   *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials.  *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988).  We may grant summary judgment or partial summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); *Sundstrand Corp.*, 98 T.C. at 520.  Where the moving party properly makes and supports a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of such party's pleading" but must set forth specific facts, by affidavit or otherwise, showing that there is a genuine dispute for trial.  Rule 121(d).

[*5] B.    *"Protected in Perpetuity" Requirement*

Section 170 allows a deduction for charitable contributions made in the taxable year. Deductions for donations of partial interests in property are generally prohibited. § 170(f)(3). However, the Code has exceptions for specific types of partial interests, one of which is a "qualified conservation contribution." § 170(f)(3)(B)(iii). For the donation of an easement to be a "qualified conservation contribution," the conservation purpose must be "protected in perpetuity." § 170(h)(5)(A).

The regulations set forth detailed rules for determining whether this "protected in perpetuity" requirement is met. Key to our analysis here are the rules governing the mandatory division of proceeds in the event the property is sold following a judicial extinguishment of the easement. *See* Treas. Reg. § 1.170A-14(g)(6).

These regulations recognize that "a subsequent unexpected change in the conditions surrounding the property . . . can make impossible or impractical the continued use of the property for conservation purposes." *Id.* subdiv. (i). Despite that possibility, "the conservation purpose can nonetheless be treated as protected in perpetuity if the restrictions are extinguished by judicial proceeding" and the easement deed ensures that the charitable donee, following the sale of the property, will receive a proportionate share of the proceeds and use those proceeds consistently with the conservation purposes underlying the original gift. *Ibid.* This requirement is strictly construed; if a donee is not absolutely entitled to a proportionate share of extinguishment proceeds, then the conservation purpose of the contribution is not protected in perpetuity. *Carroll v. Commissioner*, 146 T.C. 196, 212 (2016).

The regulations implement this "proportionate share" rule by requiring that the easement deed vest the donee with "a property right . . . with a fair market value that is at least equal to the proportionate value that the perpetual conservation restriction at the time of the gift, bears to the value of the property as a whole at that time." Treas. Reg. § 1.170A-14(g)(6)(ii). The "proportionate value of the donee's property rights," as thus computed, "shall remain constant." *Ibid.* In effect, the regulation determines an apportionment fraction, calculated as of the date of the gift, that is multiplied by the sale proceeds to ascertain the donee's share. *See Coal Prop. Holdings, LLC v. Commissioner*, 153 T.C. 126, 137 (2019).

**[*6]**    Upon initial inspection the easement deed at issue seems to track the regulation precisely. It provides that "Grantee's percentage interest shall be determined as the fair market value of this Easement as of the Recording Date divided by the fair market value of the Property as a whole as of the Recording Date." But respondent views as problematic the sentence that appears two lines later: "The values upon the Recording Date of this Deed shall be those values used to calculate the deduction for [F]ederal income tax purposes allowable by reason of this grant pursuant to Section 170(h) of the Code."

In elaborating his argument respondent relies principally on *Carroll*. The deed there provided that the numerator of the apportionment fraction—i.e., the value of the donee's property right—was "the deduction for federal income tax purposes allowable by reason of this grant, pursuant to Section 170(h) of the Code." *Carroll*, 146 T.C. at 215 (emphasis omitted). We held that this formula violated the regulation, noting that, if the IRS denied the deduction for reasons other than valuation—in which case no deduction would be "allowable"—the numerator of the apportionment fraction "will be zero." *Id.* at 217. In the event of extinguishment the taxpayers could argue that they "never received a tax deduction" and hence that the donee was entitled to no share, rather than to a proportionate share, of the sale proceeds. *Id.* at 218. Such an argument, we found, would be "supported by the literal terms of the easement, and there is no evidence of a different intent." *Ibid.*

Our resolution of this question turns on the proper interpretation of the Corning Place easement deed. State law governs this inquiry. *See Hoffman Props. II, LP v. Commissioner*, 956 F.3d 832, 834 (6th Cir. 2020). A contract should be "read as a whole and the intent of each part gathered from a consideration of the whole." *Saunders v. Mortensen*, 801 N.E.2d 452, 455 (Ohio 2004). A court applying Ohio contract law should attempt to "harmonize all the provisions rather than produce conflict in them." *Lincoln Elec. Co. v. St. Paul Fire & Marine Ins. Co.*, 210 F.3d 672, 685 (6th Cir. 2000) (quoting *Ottery v. Bland*, 536 N.E.2d 651, 654 (Ohio Ct. App. 1987)).

The extinguishment provision in Carroll was drafted quite differently from the one here, and we think respondent errs in equating them. The deed in *Carroll* defined the numerator as "the deduction . . . allowable" for Federal income tax purposes, and we construed this phrase (consistently with its context) to mean the deduction allowable to the taxpayer in that case. The deduction allowable to the taxpayer, in other words, was itself the numerator, and that deduction could be zero.

**[\*7]**     Here, the deed defines the numerator as "the fair market value of this easement as of the Recording Date." It then says that this value (and the value appearing in the denominator) "shall be those values used to calculate the deduction . . . allowable . . . pursuant to Section 170(h)." Grammatically speaking, the "allowable" phrase here does not define the numerator. It simply specifies the deduction in question—namely, the deduction that is allowable to taxpayers generally under section 170(h).

Three other features of the instant deed distinguish this case from *Carroll*. The first is the phrase "values used to calculate," which does not appear in the *Carroll* deed. As often happens with the passive voice, one is forced to ask, "Used by whom?" Respondent appears to contend that the phrase means "the values used by the IRS or a court to calculate the deduction ultimately allowed to the taxpayer." On this reading, the provision would resemble that in *Carroll*. But this phrase could also mean "the values used by the taxpayer to calculate the deduction claimed on its return." On that reading the numerator would be very large and consistent with the regulation.

We find the latter interpretation more plausible because of a second feature of the Corning Place deed, namely, its repeated references to "the recording date." As noted earlier, the deed initially says that the "Grantee's percentage interest shall be determined as the fair market value of this Easement as of the Recording Date divided by the fair market value of the Property as a whole as of the Recording Date." This phrase appears again in the sentence respondent views as problematic: "The values upon the Recording Date of this Deed shall be those values used to calculate the deduction . . . allowable . . . pursuant to Section 170(h)." The only values known "as of the Recording Date" would be the values that Corning Place intended to use in preparing its tax return, which would appear on the face of the appraisal.

A third feature of the instant deed distinguishes this case even more sharply from *Carroll*. The deed in *Carroll* initially defined the numerator as the deduction allowable for Federal income tax purposes. It then stated that "[t]he parties shall include the ratio of those values [i.e., the numerator and the denominator] with the Baseline Documentation and shall amend such values, if necessary, to reflect any final determination thereof by the Internal Revenue Service or a court of competent jurisdiction." *Carroll*, 146 T.C. at 215 (emphasis omitted). This final clause made it absolutely clear that the parties intended the numerator

[*8] to be the deduction ultimately allowed to the taxpayer granting the easement. No such clause appears in the Corning Place deed.

In sum, applying contract interpretation principles of Ohio law, we conclude that our holding in *Carroll* does not apply to the judicial extinguishment provision involved here. In *Carroll* we found "no evidence" that the parties intended to give the donee a proportionate share whose value was fixed on the date of the grant. *Id.* at 218. Here the opposite is true. The Corning Place deed specifies that the donee's percentage interest "shall be determined as the fair market value of this Easement . . . divided by the fair market value of the Property as a whole." That formula is fully consistent with the regulation. The deed makes clear that these values are fixed "as of the Recording Date" and "shall remain constant." These values are not contingent on (or modifiable in the light of) an IRS audit or other future event. And in referring to the "deduction . . . allowable . . . pursuant to Section 170(h)," the deed does not define the numerator, as in *Carroll*, but simply specifies the deduction that Corning Place will claim on its tax return using the values determined as of the recording date—namely, the deduction allowable to taxpayers generally under section 170(h) of the Code. We will accordingly deny respondent's Motion for Partial Summary Judgment on this point.[3]

C.     *Substantiation Requirements*

Respondent next contends that Corning Place failed to submit timely all the items required to substantiate the deduction. Section 170(h)(4)(B) establishes special rules for historic preservation facade easements. A taxpayer claiming a deduction for donating such an easement must include with its return a "qualified appraisal" as defined in section 170(f)(11)(E). *See* § 170(h)(4)(B)(iii)(I). A qualified appraisal

---

[3] We note a recent opinion of the U.S. Court of Appeals for the Eleventh Circuit concluding that the Department of the Treasury did not comply with the notice-and-comment requirements of the Administrative Procedure Act when promulgating the "judicial extinguishment" regulation. *See Hewitt v. Commissioner*, 21 F.4th 1336 (11th Cir. 2021), *rev'g and remanding* T.C. Memo. 2020-89. It is not entirely clear whether that opinion invalidated the regulation in its entirety, or only insofar as it is interpreted to disallow a charitable contribution deduction where the deed's judicial extinguishment provision includes a carve-out for donor improvements. *See id.* at 1342–53. No such carve-out appears in the Corning Place deed. However, to the extent the Eleventh Circuit's reasoning is interpreted broadly, it would offer additional support for denying respondent's motion for partial summary judgment. (Absent stipulation to the contrary, the instant case would be appealable to the U.S. Court of Appeals for the Sixth Circuit. *See* § 7482(b)(1).)

[*9] must set forth (among other things) the qualifications of the appraiser. Treas. Reg. § 1.170A-13(c)(3)(ii)(F). The taxpayer must also include with its return photographs of the building's exterior. § 170(h)(4)(B)(iii)(II).

Respondent contends that Corning Place did not meet these requirements. The appraisal listed, in the table of contents, an addendum setting forth the appraiser's qualifications. But that addendum was missing from the copy of the appraisal submitted with the return and was supplied to the IRS subsequently. Respondent asserts that photographs of the Garfield Building, which were submitted with the return, were inadequate because they were insufficiently detailed, were undated, and neglected to capture the building's rooftop.

Viewing the facts and the inferences drawn from them in the light most favorable to petitioner, *see Sundstrand*, 98 T.C. at 520, we conclude that summary judgment on these points should be denied. To be entitled to a charitable contribution deduction, a taxpayer need not be in literal compliance with every single reporting requirement. In *Bond v. Commissioner*, 100 T.C. 32, 41 (1993), we held that some of these requirements, while "helpful to respondent in the processing and auditing of returns," are "directory and not mandatory." In appropriate circumstances, these requirements can be satisfied by substantial rather than literal compliance. *Id.* at 42. And even if a taxpayer cannot demonstrate substantial compliance, he may be able to show that any shortfall was due to reasonable cause and not willful neglect. *See* § 170(f)(11)(A)(ii)(II); *Crimi v. Commissioner*, T.C. Memo. 2013-51, 105 T.C.M. (CCH) 1330, 1353. Reasonable cause can include relying on the advice of a professional. *See Neonatology Assocs., P.A. v. Commissioner*, 115 T.C. 43, 98–99 (2000), *aff'd*, 299 F.3d 221 (3d Cir. 2002). We conclude that these issues would benefit from further elaboration at trial. *See Belair Woods, LLC v. Commissioner*, T.C. Memo. 2018-159, 116 T.C.M. (CCH) 325, 330.

D.    *Filing Fee*

Section 170(f)(13)(A) provides that "[n]o deduction shall be allowed with respect to any contribution [of a facade easement] unless the taxpayer includes with the return for the taxable year of the contribution a $500 filing fee." The statute specifies that such filing fees "shall be used for the enforcement of the provisions of subsection (h)" dealing with qualified conservation contributions. § 170(f)(13)(C). Respondent contends that the deduction must be denied in its entirety because

**[\*10]** Corning Place omitted a $500 filing fee when filing its original return for 2016.

However, Corning Place did submit the $500 filing fee as soon as this omission was brought to its attention, and the IRS accepted the filing fee. Surmising that the fee has now been dedicated to the Commissioner's section 170(h) enforcement program, petitioner contends that it substantially complied with the statutory mandate because the statute's purpose has been accomplished. Neither this Court nor any other court has yet considered whether section 170(f)(13) can be satisfied by substantial compliance.

Petitioner also contends that the reference in section 170(f)(13) to "the return" could be interpreted to mean either the original return or an amended return for the taxable year. *Cf.* Treas. Reg. § 1.170A-13(c)(2)(i)(B) (explicitly requiring that appraisal summary be attached to the tax return "on which the deduction . . . is first claimed"); *id.* subpara. (4)(iv)(G) (same). Petitioner contends that Corning Place submitted its $500 filing fee together with (or in advance of) an amended return for 2016, allegedly filed on November 1, 2018. But no copy of the amended return is included in the record. For these reasons we conclude that this issue, like the reporting issues discussed above, would benefit from further elaboration at trial.

To reflect the foregoing,

*An order will be issued denying respondent's Motion for Partial Summary Judgment.*